*481 OPINION of the Covut, by
Judge Logan.-
— The appellees, who were complainants below, exhibited their bill to recover of the appellant certain land, to which he holds the elder patent ; but to which they allege the better right under an adversary claim.
The appellant holding the legal tide, it is therefore proper to examine first the validity of the appellees’ right. They claim under an entry which was made on the 31st of July 1788, in these words, “ John Tebbs, &c. enters 20,000 acres of land, on treasury warrants, &«. on M’Conneli’s fork of Licking, beginning at a large black ash and small buckeye marked thus (I. T.) on the side of a Buffalo road leading from the lower Blue licks a northeast course, and about seven miles northeast and by east from the said Blue licks, ike.
An entry depending on the same objects of description has been decided to be good, both by this court and the supreme court of the United States. , But the appellant not being a party to either of those suits, can be no otherwise affected by the decisions than as they shall furnish principles for the construction of entries in general. For he is no more concluded by the testimony and facts in those cases, than in other cases in which he was not a party, and therefore had not the benefit of introducing evidence, or going into an examination of that which had been introduced in support of the adversary claim.
The entry must therefore be examined By the evidence in this cause, and decided on general principles. The lower Blue lick, from its connection with the general history of the conntry, must be judicially noticed as a good call. We shall proceed therefore to examine whether asubsequent locator, upon using reasonable diligence, could, from the description given, have found and known with certainty the road intended ?
It has been argued that an inquirer in setting out from the lower Blue licks, would not have known which among several roads have taken leading from thence in a northeastwardly direction.
But the testimony in the cause brings into view no other roads tending m the least to render uncertain the *482 one intended. The argument seems to have been predicated on the supposed existence of roads from proof probably taken in the other suits.
The mtftake in calling for a hjack a(B in itead of a Hue *Jb does not vi - tiate the entry, She description 6eing othérwife fufficient to Hew chefe as the trees alluded to.
Entry ** on the head of Summers’s or Summerville’s yon, a branch of the eaft fork of ticking” invalid, the run being generally «ailed Simrs'U's
The premises, however,.thus assumed are unwarranted in this case. If those roads really existed at the date of the entry, perhaps a correct delineation of them would have presented no difficulty in selecting the one intended. But without proof of such roads, it was not incumbent on the complainants to introduce evidence for the purpose of obviating doubts arising only from their supposed existence.
The place of beginning is shewn to be on the side of the Buffalo road which at the date of the entry led from the lower Blue licks to Limestone, and is from said licks north 54 degrees east, seven miles and 139 poles on a direct line. But it is objected that the distance ought to have been computed along the road, and not on a direct line.
The objection would have been well founded, had it been shewn that the marked trees called for would thereby have been rendered uncertain, or that they could not probably have been found on using reasonable diligence.
It is proven, however, that thé ash tree which stood at the place of beginning was frequently called the nine mile tree from the lower Blue licks. But whether that distance was ascertained by admeasurement along the road, or whether the present road passes over the same ground that the road did at the time of making the entry, are left entirely to conjecture.
But the principal question for inquiry still remains, whether the trees called for could from the description given have been found on reasonable search, and known with certainty when found Í
Their supposed distance from the Blue lick, as given by the entry, may be sufficient or insufficient at the distance of nine miles, according to their description and the certain means of finding them. We shall proceed therefore to a more particular examination of these points.
The proof shews that a large ash and a buckeye near the same, marked with the letters I. T. large and'plain, stood immediately on the road: from'the evidence relative to the road and the conspicuous situation of the *483 marked trees, it is the opinion ©f the court, that they could with certainty have been found by ordinary diligence.
Regarding then the trees as so situated on the road that they would certainly have been found by pursuing the road, we are yet led to a farther inquiry proceeding front a mistake in the description of the species of one of thg trees claimed as the beginning. The evidence seems to establish the fact that the ash tree which stood at the place of beginning was a blue instead of a black ash. Now it will not be controverted that in proportion as the entry appears to be inaccurate in its description both with regard to distance and the species of wood called for, that it is rendered uncertain and its validity more doubtful. But one wishing to find the beginning of this entry, it is believed, by pursuing the road could scarcely have missed perceiving the blue ash and buckeye marked with the letters I. T. ; and moreover, have ascertained satisfactorily, that there was no other ash and buckeye marked with those letters, within such distance on said roadL as a locator could haye been expected to search.
If then a subsequent locator possessing information with respect to so much of this road as would seem to form a reasonable limit to search for those trees, were apprized of the trees marked, and also that there was no other ash and buckeye thus marked, the conclusion seems irresistible that he would have concluded with certainty that this was the place of beginning.
It is therefore the opinion of the court that the en» try is good, its course and distances, being precise without doubt.
The next subject for our examination is the appellant’s claim. He holds under a settlement and pre-emption depending on this description : “ lying on the waters of the east fork, of Licking, joining John Williams on the west, to include an improvement.”
John Williams, who held as assignee under a settlement and pre-emption in the name of Elizabeth Stephens, had previously entered his settlement right, in these words s “ John Williams, assignee of Stephen Trigg, who was assignee of Elizabeth S tephens, enters 400 acres in Kentucky by virtue of a certificate, &c, lying on a branch of the east fotk of Licking, on ⅛.⅞ head of a run called Summerville’s run,,J
*484 The location in the certificate is the same, except that the ton is there called u Summers’s run-n
The description contained in Williams’s certificate and entry is essential to the support of the appellant’s claim’; and the head of Summers’s or Summerville’s run constitutes the only certainty of that description.
Now there is no evidence in the cause proving that the branch in question was generally known or called either Summers’s or Summervillehs run. But it seems to have been generally known by the name of SimreiPs run. And there is nothing in the entry which is calculated to obviate the mistake in the description of the run. The entry therefore is too vague to be supported.
The decree of the general court must be affirmed with cost.